# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

VENETHIA COOK INDIVIDUALLY,    :
VENETHIA COOK as ADMINISTRATOR:
of the ESTATE of VINCENT DEMARIO  :
TRUITT, and ANDRAE TRUITT     :
INDIVIDUALLY               :
                     :     CIVIL ACTION FILE NO.
    Plaintiffs,          :
                     :     <u>1:22-cv-00121-JPB</u>
v.                  :
                     :
COBB COUNTY, GEORGIA and    :
MAX HAMILTON KARNEOL in his  :
official and individual capacity   :
                     :
                     :
    Defendants.         :
_____:

## COMPLAINT

COME NOW, Venethia Cook individually, Venethia Cook as the Administrator of the Estate of Vincent Demario Truitt, and Andrae Truitt individually ("Plaintiffs") and file this Complaint against Defendants Cobb County, Georgia and Max Hamilton Karneol in his official capacity and individual capacity, and show this Honorable Court as follows:

## INTRODUCTION

### 1.

This is a 42 U.S.C. § 1983 action brought under the Fourth Amendment and

Fourteenth Amendments to the United States Constitution arising from the police officer's unreasonable use of deadly force against decedent Vincent Demario Truitt. Plaintiffs have also asserted pendant state law claims for wrongful death, negligence, assault, battery, and violation of the Georgia Constitution. Plaintiffs further contend that the violation of Vincent Demario Truitt's federal constitutional rights were caused by the defective customs, practices, or policies of Defendant Cobb County, Georgia, and that both the officer and the County are liable for said constitutional violations.

## JURISDICTION, VENUE, AND PARTIES

2.

This action is brought pursuant to 42 U.S.C. §§1983 and 1988, as well as the Fourteenth Amendment of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. § 1331, § 1343, and the aforementioned constitutional and statutory provisions. Plaintiffs further invoke the pendant or supplemental jurisdiction of this Court to decide claims arising under state law pursuant to 28 U.S.C. § 1367.

3.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and N.D.L.R. 3.1(B)(3) because the event giving rise to this claim occurred in Cobb County, Georgia, which is situated within the district and divisional boundaries of the Atlanta Division of the Northern District of Georgia, and because both Defendants reside

within said District and Division.

4.

On January 22, 2021, pursuant to Georgia's *ante litem* statute, O.C.G.A. § 36-11-1, Plaintiffs provided Cobb County with notice of their allegations by letter sent certified mail to Lisa Cupid, the Chairwoman of the Cobb County Board of Commissioners and Cobb County Police Chief Tim Cox. Because thirty (30) days have passed from the presentation of such claims to Cobb County, and Cobb County has not acted upon it, *see* O.C.G.A. § 36-11-1, Plaintiffs now file this Complaint for damages against Defendants. See Exhibit "A."

5.

Venethia Cook is the mother and heir of her son Vincent Demario Truitt, deceased.

6.

Andrae Truitt is the father and heir of his son Vincent Demario Truitt, deceased.

7.

Vincent Demario Truitt was unmarried at the time of his death.

8.

Vincent Demario Truitt has fathered no children.

9.

Vincent Demario Truitt died intestate without a will or trust.

10.

Plaintiff Venethia Cook is the duly appointed Administrator of the Estate of Vincent Demario Truitt. *See* Exhibit "B."

11.

Plaintiff Venethia Cook brings this action in her individual capacity as the surviving mother of Vincent Demario Truitt to recover for the wrongful death of her son Vincent Demario Truitt, pursuant to Georgia's wrongful death statute.

12.

Plaintiff Venethia Cook also brings this action in her capacity as the duly appointed Administrator of the Estate of Vincent Demario Truitt to recover for Vincent Demario Truitt's personal injuries and other damages authorized by law.

13.

Plaintiff Andrae Truitt brings this action in his individual capacity as the surviving father of Vincent Demario Truitt to recover for the wrongful death of his son Vincent Demario Truitt, pursuant to Georgia's wrongful death statute.

14.

Plaintiff Venethia Cook and Andrae Truitt in their individual capacities and in Venethia Cook's capacity as Administrator of the Estate of Vincent Demario

Truitt will be referred to herein collectively as "Plaintiffs" unless otherwise specified.

15.

Plaintiff Venethia Cook and Andrae Truitt are citizens of the State of Georgia.

16.

Defendant Max Hamilton Karneol is an individual who was, at all times relevant herein, a police officer employed by Cobb County who acted within the scope of his employment by and pursuant to the policies and procedures of the Cobb County Police Department.

17.

Defendant Cobb County, Georgia is a duly organized and existing governmental entity under the laws of the State of Georgia with the capacity to sue and be sued, and which operates the Cobb County Police Department that employs Defendant Karneol.

18.

At all times relevant herein, Defendant Karneol acted under color of state law and on behalf of Cobb County, Georgia.

19.

All the parties herein are subject to the jurisdiction of this Court.

# FACTUAL ALLEGATIONS

## 20.

On the evening of July 13, 2020 into the early morning of July 14, 2020, nonparty Kewaun Robinson ("Robinson") picked up a 2014 Nissan Altima from a male named Kory (last name unknown) from Pine Apartments on Campbellton Road in Fulton County, Georgia.

## 21.

Kory told Robinson that the Nissan Altima was a rental vehicle.

## 22.

After driving the vehicle for some time, Robinson picked up decedent Vincent Demario Truitt, and nonparty Torodd Woods ("Woods") at the Pine Apartment complex.

## 23.

Robinson, decedent Truitt, and Woods all left the Pine Apartment Complex around 10:00pm.

## 24.

Robinson was the driver of the Nissan Altima, Decedent Truitt was the front seat passenger, and Woods was the backseat passenger.

## 25.

The 2014 Nissan Altima was reported stolen, but Robinson nor decedent

Truitt were aware the vehicle was stolen when Truitt accepted the ride.

26.

Robinson, Truitt, and Woods were occupants of the Nissan Altima, and ultimately ended up at a Quik Trip gas station.

27.

While at the Quik Trip gas station, an attempted Pit maneuver was attempted to disable the car because Cobb County law enforcement had responded to the stolen vehicle driving by Robinson.

28.

At the same time, Defendant Karneol, a police officer for the Cobb County Police Department was on routine patrol.

29.

On July 13, 2020 Defendant Karneol began his shift at 11:00pm and his shift was due to end at 7:00am.

30.

While on patrol Defendant Karneol got a hit from his patrol vehicle's computer of a possible stolen Nissan that fit the description of the vehicle in which Vincent Demario Truitt was a passenger.

31.

Defendant Karneol was located in the area where Six Flags Parkway turns into

Riverside Parkway near the "Bluffs."

## 32.

Defendant Karneol told radio that he was in the area of the possible stolen vehicle.

## 33.

Defendant Karneol continued down Riverside Parkway past Six Flags amusement park.

## 34.

As Defendant Karneol passed Six Flags amusement park, he made a turn east onto South Service Road.

## 35.

Defendant Karneol stopped driving as he witnessed a vehicle approaching him. This was shortly after another officer stated over the radio the possible stolen car may be off Lee Industrial Boulevard and South Service Road.

## 36.

Defendant Karneol slowed his speed as he observed a Nissan approaching him. The vehicle was the Nissan that fit the description of the possible stolen vehicle.

## 37.

Defendant Karneol stopped his patrol vehicle and turned it around while on

South Service Road.

38.

Defendant Karneol began travelling in the same direction of the alleged stolen vehicle going towards I-20.

39.

Defendant Karneol began following the Nissan Altima into a Quik Trip gas station when he activated his blue lights.

40.

Robinson and not Truitt drove the Nissan Altima between two sets of gas pumps as Defendant Karneol followed.

41.

As Robinson was exiting the Quik Trip service station another patrol vehicle collided with the Nissan as Defendant Karneol followed.

42.

After the collision, the Nissan Altima driven by Robinson exited the Quik Trip gas station and began travelling on Riverside Parkway.

43.

Defendant Karneol continued to follow the Nissan Altima on Riverside Parkway as it was travelling towards I-20.

44.

The Nissan and Defendant Karneol passed the entrance and exit of I-20, and started back towards Six Flags amusement park.

45.

Another patrol vehicle intentionally struck the Nissan driven by Robinson as Defendant Karneol was behind it.

46.

The Nissan driven by Robinson came out of the pit maneuver initiated by another officer and began driving towards the Bluffs area of Austell.

47.

The Nissan driven by Robinson turned into a warehouse parking lot, and drove behind the warehouse.

48.

Two patrol vehicles were in front of Defendant Karneol.

49.

The Nissan was struck by a patrol vehicle for a third time, and the Nissan Altima came to its final resting spot at the warehouse.

50.

Defendant Karneol stationed his patrol vehicle behind the Nissan, and observed Robinson, decedent Truitt, and Woods begin to exit the vehicle.

51.

Robinson, the driver of the Nissan Altima exited the vehicle from the driver door.

52.

Defendant Karneol began to give chase.

53.

Meanwhile, decedent Vincent Demario Truitt exited the Nissan and began running when Defendant Karneol un-holstered his fire firearm.

54.

While decedent Vincent Demario Truitt's back was turned away from Defenant Karneol, Defendant Karneol intentionally discharged his firearm twice striking decedent Truitt in the lower back near his buttocks and back of his shoulder.

55.

While Decedent Truitt was exiting the vehicle, he posed no danger to Defendant Karneol or any officer.

56.

The bullets filed by Defendant Karneol from his Cobb County issued firearm was fatal, killing decedent Truitt.

57.

The vehicle chase and fatal shooting of decedent Truitt was captured on

Defendant Karneol's body camera.

58.

Decedent Truitt did not pose an imminent threat of death or serious bodily harm to Defendant Karneol or anyone else when he was intentionally shot in the back by Defendant Karneol.

59.

At the time decedent Truitt was shot, his back was turned and did not pose a physical threat of harm to Defendant Karneol. Defendant Karneol's actions were not objectively reasonable.

60.

At no time relevant herein did decedent Truitt assault, threaten or otherwise endanger anyone so as to justify the use of deadly force against him by Defendant Karneol.

61.

Defendant Karneol's use of force to apprehend decedent Truitt was an intentional use of deadly force whether Defendant Karneol intended to discharge the firearm or not; alternatively, it was an intentional use of force that had foreseeable deadly consequences whether those consequences were intended or not.

62.

Defendant Karneol acted with criminal intent, and his decision to use deadly

force was unreasonable from the standpoint of what an objectively reasonable officer would have done under the circumstances.

63.

After the shooting of decedent Truitt at the hands of Defendant Karneol, Defendant Karneol did not aid or assist in any life saving measures.

64.

At all times relevant herein, Defendant Karneol acted pursuant to the official customs and policies of the Cobb County Police Department and in accordance with the training that he received as an employee of Defendant Cobb County leading up to the incident giving rise to this lawsuit.

65.

At all times relevant herein, Defendant Cobb County maintained defective customs and policies under which Defendant Karneol and other officers received. Defendant Karneol and other officers received deficient oversight and training in the use of force and firearms that did not adequately address the prevention of excessive force by the intentional discharges of firearms in situations where other non-lethal means of force was required in detaining suspects.

66.

Said deficiencies in oversight and training were a policy defect that was a contributing cause of the shooting of Vincent Demario Truitt by Defendant Karneol.

67.

The problem of intentional firearms discharges resulting from intentional police actions is a serious area of law enforcement for which the need for additional training was obvious in the years leading up to the shooting of Vincent Demario Truitt by Defendant Karneol, but Defendant Cobb County failed to develop and implement appropriate policies, oversight, and training to address that problem.

68.

Prior to the shooting of Vincent Demario Truitt by Defendant Karneol, the Cobb County Police Department had no system for tracking excessive use of force by intentional firearms discharges, although it was known by department officials that excessive use of force by intentional firearms discharges had been a problem within the Department.

69.

The Department's failure to track and record excessive use of force by intentional firearms discharges by its officers in no way reduces its responsibility to address an issue that has historically and tragically resulted in serious injury or death to many people.

70.

The entirety of the training regarding use of deadly force with a firearm both before and after decedent Truitt's death, has been conducted during firearms training

segments, but the compartmentalization of that training is a glaring insufficiency in Cobb County's training program because any effective training program must train officers in the use of force in all contexts, not just on the firing range.

71.

Any training program that has anything to do with drawing, pointing, shooting a firearm, moving in close proximity to a potentially dangerous subject, and controlling/arresting subjects must teach officers exactly when to draw and holster the weapon, where the weapon should be pointed when it is unholstered, and whether an officer can simultaneously engage in other conduct while holding a gun. The foregoing concepts must be taught and practiced during all training courses that involve a police officer in contact with a subject with whom an officer might reasonably be predicted to have to use force to effect an arrest and/or defend himself or others, and including this information in all such training sessions: including use of force classroom instruction. This undertaking would require minimal additional effort on the part of the instructors.

72.

Simply providing information is not enough to sufficiently train officers on the use of deadly force with a firearm. Another facet that must be addressed in an effective training program is the necessity of including rigorous and repetitive drills that reinforce the classroom instruction regarding use of force and the use of force

continuum.

73.

These types of skills can only be successfully taught by repetitive exercises and constant reminders by instructors during stressful real-life scenario training, arrest and control tactics training, computer-generated scenarios, simulations, role playing, and firearms qualification and tactics courses.

74.

Given the dire consequences to officers and citizens of an officer using deadly force with a firearm when it is inappropriate to do so, the type of training specified herein should have been provided by Cobb County before decedent Truitt was shot, and the failure to provide such training to address an obvious need for training authorizes an inference of deliberate indifference on the part of Cobb County.

75.

Under the traditional system of evaluating firearms proficiency, officers are evaluated by the number of bullet holes they put in a target and the amount of time to do so.

76.

This training fails to evaluate the officer's proficiency at preventing excessive force that cannot be quantified by an officer's range score.

77.

Cobb County's failure to properly train Defendant Karneol as specified herein was systemic, as was its failure to provide proper oversight to prevent the conduct that can cause excessive force by use of firearms. The Cobb County Police Department had no cohesive program to address excessive use of deadly force by a firearm through either training or oversight, and it had no written directives to put officers on notice that they were subject to discipline for use of excessive force by a firearm.

78.

There is no record that any officer of the Cobb County Police Department was ever disciplined for the death of Vincent DemarioTruitt. Defendant Karneol was exonerated and not criminally indicted even though his actions were contrary to the limited training that he did receive, which is further evidence of Cobb County's deliberate indifference to the problem of excessive use of force with firearms in the Cobb County Police Department.

79.

While no amount of training and oversight can guarantee that officers will never use excessive force with a firearm, a properly conducted training program and appropriate departmental support for it can minimize the potential, and Cobb County did not have such a program in place prior to the shooting of decedent Truitt despite

an obvious need for training and oversight in the area of preventing the use of excessive force by discharging firearms.

80.

Accordingly, Cobb County failed to provide Defendant Karneol with training that was sufficient to prepare him to handle the circumstances he confronted on the night he shot and killed decedent Truitt. This lack of training caused Defendant Karneol to use excessive force by shooting decedent Truitt in the back while he posed no threat to Defendant Karneol or any other officer.

**COUNT I**
**FOURTH AMENDMENT – 42 U.S.C. § 1983**
**(Excessive Force)**

81.

The foregoing Paragraphs (1) through (80) are incorporated by reference herein.

82.

At all times relevant to this action, Defendant Karneol was acting under color of state law and within the scope of his discretionary function as a police officer of the Cobb County Police Department.

83.

The aforementioned misconduct of Defendant Karneol toward decedent Vincent Demario Truitt constituted an unreasonable use of deadly force, or

alternatively an unreasonable use of force that proximately caused the death of Vincent Demario Truitt, and thus amounted to an unreasonable seizure of Vincent Demario Truitt in violation of the Fourth Amendment of the United States Constitution.

84.

At all times relevant to this action, the law was established with *obvious* clarity that a police officer may not use deadly force to apprehend a nonviolent suspect, and no reasonable police officer would have believed that it was appropriate to use deadly force under the circumstances confronting Defendant Karneol. Accordingly, Defendant Karneol is not entitled to qualified immunity for his objectively unreasonable use of force – deadly or otherwise – in violation of the Fourth Amendment of the United States Constitution.

85.

The actions by Defendant Karneol described herein were willful, deliberate, and malicious, thereby entitling Plaintiff to an award of uncapped punitive damages.

**COUNT II**
**(Unconstitutional Search and Seizure in Violation of the Georgia Constitution, Art. I, Sec. I, ¶ XVII)**
**(abuse during course of arrest)**

86.

The foregoing Paragraphs (1) through (85) are incorporated by reference herein.

19

87.

At all times relevant to this action, Defendant Karneol was acting under color of state law and within the scope of his discretionary function as a police officer of the Cobb County Police Department.

88.

The aforementioned acts and omissions of Defendant Karneol also constituted abuse during the course of an arrest in violation of Art. I, Sec. I, Par. 17 of the Georgia Constitution.

**COUNT III**
**FOURTH AMENDMENT – 42 U.S.C. § 1983**
**(Monell Liability Official Capacity)**

89.

The foregoing Paragraphs (1) through (88) are incorporated by reference herein.

90.

Cobb County delegates final policy making authority to officials in the Cobb County Police Department to implement policies, practices, customs and procedures designed to train officers in making arrests and implementing the use of force necessary in making an arrest.

91.

The Cobb County Police Department failed to provide adequate training of

police officers on basic principles of use of force.

92.

The aforementioned defective customs and policies of Defendant Cobb County were the moving force behind Defendant Karneol's use of excessive force and the resulting firearms discharge, and accordingly, Cobb County is liable for the violation of Vincent Demario Truitt's federal constitutional rights by Karneol.

93.

Alternatively, Defendant Cobb County's failure to train Defendant Karneol and other officers in the area of law enforcement in which the need for training was obvious can be construed as deliberate indifference, and because said deliberate indifference to an obvious training need was a moving force behind the intentional discharge of Karneol's gun killing Vincent Demario Truitt. Cobb County is liable for the violation of Vincent Demario Truitt's federal constitutional rights by Karneol.

94.

Said defective policies and failure to train include, but are not limited to, the following systemic deficiencies:

(a)     Failure to provide effective training in firearms discharges that include repetitive exercises, conditioning and simulations that drills officers on (1) the proper way control, subdue, or arrest a subject with or without a

gun (2) how to move in close proximity to a potentially dangerous subject (3) the proper ways to draw, point and shoot a firearm (4) proper continuum of force when suspects exit suspected stolen vehicles – rather than the mere recitation of gun safety rules.

(b) Failure to address in training segments that deal with arrest techniques, defensive tactics, and nonlethal use of force applications, or any training that deals in "hands on" encounters between officers and suspects – and not just in the context of instruction on the firearms range.

(c) Failure to maintain a system for tracking intentional firearm discharges and to act on the information collected from that system.

(d) Failure to take intentional firearm discharges seriously as a matter for which officers should be subject to serious disciplinary action.

(e) Failure to take intentional firearms discharges seriously until someone was seriously injured or killed as a result of an intentional discharge, despite the fact that intentional discharges were known to be a serious law enforcement problem in the Cobb County Police Department long before the shooting of Vincent Demario Truitt.

95.

The aforementioned deficiencies in policy and training, as well as those

discussed elsewhere herein, caused Vincent Demario Truitt to be subjected to excessive force, caused him to be catastrophically injured and killed as a consequence of being subjected to excessive force, and to be deprived of his federal constitutional rights to be free from unreasonable seizures of his person.

## COUNT IV
## WRONGFUL DEATH
### (Against all Defendants)

96.

The foregoing Paragraphs (1) through (95) are incorporated by reference herein.

97.

Plaintiff, Venethia Cook, in her individual capacity as the surviving mother of decedent Vincent Demario Truitt, is entitled to recover the full value of the life of Vincent Demario Truitt as compensation for his wrongful death resulting from the negligence and intentional malfeasance and malice of the Defendants as described herein.

98.

Plaintiff, Andrae Truitt, in his individual capacity as the surviving father of decedent Vincent Demario Truitt, is entitled to recover the full value of the life of Vincent Demario Truitt as compensation for his wrongful death resulting from the negligence and intentional malfeasance and malice of the Defendants as described

herein.

## COUNT V
### (Negligence In The Performance of Ministerial Duties)
### (Against Defendant Karneol)

99.

The foregoing Paragraphs (1) through (98) are incorporated by reference herein.

100.

Defendant Karneol owed a duty of care to decedent Vincent Demario Truitt not to be harmed or killed by the unlawful use of deadly force.

101.

Defendant Karneol breached that duty by unlawfully and intentionally shooting decedent Vincent Demario Truitt in the back with his firearm while decedent Truitt was not posing a threat of harm to Defendant Karneol or other officers on the scene.

102.

Decedent Vincent Demario Truitt's death was directly and proximately caused by the negligence of Defendant Karneol.

103.

Defendant Karneol's actions constituted negligence and decedent Vincent Demario Truitt suffered loss of life and other damages.

104.

The aforementioned acts and omissions of Defendant Karneol constituted negligence. Because Defendant Karneol violated a ministerial duty and/or acted with actual malice, Defendant Karneol is not entitled to official immunity under Georgia law.

105.

Plaintiff Venethia Cook as Administrator of the Estate of Vincent Demaris Truitt, is entitled to recover for the pain and suffering, bodily injury, medical expenses, special damages, and funeral costs of Vincent Demario Truitt, resulting from the negligence of Defendant Karneol as described herein. Plaintiff is also entitled to punitive damages to be proven at trial.

## <u>COUNT VI</u>
### (Assault and Battery)

106.

The foregoing Paragraphs (1) through (105) are incorporated by reference herein.

107.

Defendant Karneol intentionally discharged his weapon at decedent Truitt whose back was turned and attempting to flee.

108.

Decedent Truitt posed no immediate threat to Defendant Karneol when decedent Truitt was shot in the back twice.

109.

Said gunshot wound to decedent Truitt was a violent physical injury causing substantial physical pain, and ultimately lead to the loss of life of decedent Truitt in violation of O.C.G.A. §§ 51-1-14 and 51-1-13.

110.

Defendant Karneol was without legal justification to discharge his firearm causing serious bodily injury and death to decedent Truitt.

## COUNT VII
**(42 U.S.C. § 1988)**

111.

The foregoing Paragraphs (1) through (110) are incorporated by reference herein.

112.

Plaintiffs are entitled to recovery of reasonable attorney's fees and expenses of litigation pursuant to 42 U.S.C. § 1988.

## COUNT VIII
**(Punitive Damages)**

113.

The foregoing Paragraphs (1) through (112) are incorporated by reference

herein.

114.

Based on the facts set forth above in this Complaint, Defendants acted with willful misconduct, malice, wantonness, oppression, and an entire want of care to warrant punitive damages.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

1. That Summons and process issue as required by law;

2. That Defendants be served as required by law;

3. That this matter be heard by a jury;

4. That judgment issue in favor of Plaintiff Venethia Cook and against Defendants on all counts of Plaintiffs' Complaint in the amount of $50,000,000.00 or amount to be proven at trial;

5. That judgment issue in favor of Plaintiff Andrae Truitt and against Defendants on all counts of Plaintiffs' Complaint in the amount of $50,000,000.00 or amount to be proven at trial;

6. That judgment issue in favor of Venethia Cook, as Administrator of the Estate of Vincent Demario Truitt, for general and special damages to compensate for the pain and suffering, bodily injury, medical expenses, funeral costs and other special damages incurred by decedent Vincent Demario Truitt and his estate in the amount of $50,000,000.00 or amount

to be proven at trial;

7. That judgment issue in favor of Plaintiffs for uncapped punitive damages in an amount to be determined at trial in the enlightened conscience of a fair and impartial jury;

8. Plaintiffs recover attorney's fees pursuant to 42 U.S.C. § 1988; and

9. That Plaintiffs receive any other equitable or monetary relief as this Court deems just and proper.

Respectfully submitted this 11th day of January, 2022.

THE PATTERSON FIRM

/s/ Jackie Patterson
JACKIE PATTERSON
Georgia Bar No.: 566511
*Attorney for Plaintiffs*

2964 Peachtree Rd. Suite 260
Atlanta Ga. 30305
404-841-4081
fax:404-841-4082
jackie@jackiepatterson.com

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>

I hereby certify that this document was prepared in Times New Roman, 14-point font pursuant to LR 5.1(c), NDGa.

Respectfully submitted, this 11th day of January, 2022.

**THE PATTERSON FIRM**

**<u>/s/ Jackie Patterson</u>**
**JACKIE PATTERSON**
Georgia Bar No.: 566511
*Attorney for Plaintiffs*

2964 Peachtree Rd. Suite 260
Atlanta Ga. 30305
404-841-4081
fax:404-841-4082
jackie@jackiepatterson.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of **COMPLAINT** with

the Clerk of Court using U.S. District Court's E-filing system, which will send

electronic notification to the following counsel of record:

Cobb County, Georgia
c/o Lisa Cupid, Chairwoman Cobb County Board of Commissioners
County Manager
100 Cherokee Street, # 355
Marietta, Georgia 30090

Max Karneol



Respectfully submitted, this 11th day of January, 2022.

**THE PATTERSON FIRM**

**/s/ Jackie Patterson_____**
**JACKIE PATTERSON**
Georgia Bar No.: 566511
*Attorney for Plaintiffs*

2964 Peachtree Rd. Suite 260
Atlanta Ga. 30305
404-841-4081
fax:404-841-4082
jackie@jackiepatterson.com